Attachment to Application for Fee Exemption

E. Garrett West
Associate Professor
Yale Law School

6. Do you plan to re-distribute the product of your research?  If so, please describe the manner in which it will be re-distributed?

No, except to the extent that the data inform scholarly articles that will be published.  The aim of these articles will be to simplify the calculation of attorney's fees for courts and litigants.  *See* Question 7.  The underlying dockets and court documents accessed to produce this article will not be re-distributed.  Ideally, the data extracted from those documents (but not the documents themselves) would be made available to other researchers upon request or to scholarly journals upon request during the publication process. But I am happy to discuss what would be permissible.

7. Please describe your research project, including the hypothesis or thesis that your research will support. You may be required to provide additional information.

Along with a co-author (Gill West, a J.D./Ph.D. student at Yale Law School and the Yale School of Management), I aim to simplify the calculation of attorney's fees in cases with fee-shifting provisions.  "Prevailing parties" in a wide range of federal cases are entitled to "reasonable" attorney's fees.  The reasonable fee is calculated by multiplying a prevailing hourly rate in the relevant market for legal services by the number of hours reasonably expended.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).  Courts often rely on schedules to find the prevailing hourly rate.  *See J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 36 (D.D.C. 2023); Maureen Carroll, *Fee-Shifting Shortcuts*, 60 Harv. C.R.-C.L. L. Rev. 47 (2025).  Courts might choose to use these schedules because they simplify the task for the court, better approximate the prevailing rate, and give certainty to litigants about likely fee awards (which can be a substantial portion of the total monetary award in some cases, *see City of Riverside v. Rivera*, 477 U.S. 561 (1986)).  But the production of accurate schedules is very time intensive.

I plan to produce a series of schedules of "reasonable" hourly rates for (ideally) all federal district courts and for many categories of cases in which attorney's fees for prevailing parties are available (*e.g.*, 42 U.S.C. § 1983, Title VII, the ADA, the FLSA, and other statutes).[1]  We will (1) identify cases in these categories in which district courts entered fee awards; (2) download a representative sample of fee awards and associated motions; (3) use large language models to collect data from those documents regarding the hourly rates that courts have deemed reasonable in each federal district court, for each kind of claim, and for the experience level of the attorney; and (4) run a series of regressions—of attorney hourly rates on relevant legal market, experience of the attorney, the legal basis for the claim, and any other relevant covariates—to produce statistical tables that could be used by courts and litigants to determine reasonable hourly rates.

The tables will likely look similar to the "Fitzpatrick Matrix" used by the United States District Court for the District Columbia.  *See J.T. v. District of Columbia*, *supra*.  But the tables may be more precise in a few ways.  *First*, there will be separate tables for *each* federal district court; one

---

[1] We will exclude social security cases and Prison Litigation Reform Act cases, because the benefits of a fee schedule in these cases would be much more limited.

limitation of prior matrices is that they have been available in only some legal markets. *Second*, there may be separate tables depending on the *category of claims*; the hourly rates deemed reasonable may differ for, to take examples, constitutional tort claims under 42 U.S.C. § 1983 and claims brought under the Fair Labor Standards Act.

These tables would be of substantial benefit to the bench and bar. We intend to publish the results in a law review to provide district courts (and litigants) with information that would aid them in calculating reasonable hourly rates in cases with fee-shifting provisions. We estimate that the fee schedules would be relevant to some 60,000 cases filed each year in the federal courts. If district courts use such schedules, they could save time for the judges. The schedules could also help the parties anticipate their likely recovery or exposure, which could reduce the cost of litigation and even encourage parties to settle.

8. Please describe what resources are needed from PACER and why. Limitation in scope is demonstrated by narrowly tailoring the amount of exempt access requested to meet the needs of the defined research project.

The paper requires finding fee awards entered by federal district courts and, once those awards are identified, collecting data about the hourly rates that each court has deemed reasonable. I would need to extract the following data from court documents: (1) information about each attorneys' fee award, including the hourly rates requested and deemed reasonable, the number of hours expended and deemed reasonably expended, the total fee award, and total damages (if any); (2) information about the attorneys, including requested hourly rate and the experience and quality of the attorney; and (3) information about the legal claims, including the legal basis for the claim and the provision authorizing the fee. I may need to extract further information if other common factors determine the amount of the fee award.

Extracting that information involves searching dockets to identify cases in which district courts entered fee awards, downloading orders granting fee awards and the associated motions, and collecting written data from the documents themselves. Other resources (*e.g.*, Westlaw, Bloomberg, CourtListener) are not likely to have the universe, or even a representative sample, of fee awards entered by federal district courts. And the PACER fees that this project would generate would be prohibitively expensive.

I would expect to tailor the access requested in the following ways. *First*, I would plan to use the Federal Judicial Center Integrated Database to identify a set of dockets that are likely to involve a fee award. In particular, I would plan to identify only cases in which the Nature of Suit code corresponds to a statute in which a fee-shifting statute is available (*e.g.*, NOS 440 ("Other Civil Rights"), 442 ("Employment"), 710 ("Fair Labor Standards Act")). I would also plan to limit the set of dockets to those in which other FJC data indicate that the case might have resulted in an order of attorney's fees, including by using the IBD "disposition" or "judgment" codes. *Second*, I would plan to run searches in stages, first determining which of the initially identified set of dockets includes a fee award and then, only after identifying which dockets have fee awards, downloading the orders and associated motions from those dockets. (I would plan, to the extent feasible, to limit downloads of filings and orders to those with essential information about the fee awards.) *Third*, I would restrict the number of dockets searched and fee awards downloaded to those necessary to have enough data points for the planned regressions. *See* Question 9.

9.  Please estimate of the number and type(s) of cases and/or documents needed to accomplish your research.

I estimate that I would need to search 120,000 dockets and then download fee awards and associated motions for between 2,820 and 9,400 cases.  I estimate the number of *docket* searches as follows:  after screening cases based on Nature of Suit codes, only about 60,000 cases per year implicate fee-shifting statutes; of those 60,000 cases, after screening based on Disposition codes, I estimate that only 40% (or 24,000 dockets) would plausibly result in a fee award.  I would plan to search five years of cases, and likely those terminated between FY 2021 and FY 2025.  So that is 120,000 dockets.  I estimate the number of *orders and motions* as follows:  I would prefer to have at least 30 and ideally 100 observations per district court, which would be somewhere between 2,820 and 9,400 fee awards.  These are estimates:  we may need fewer observations, or way may need to search additional dockets to identify a sufficient number of observations for each district court.  Ultimately, the goal is to collect enough observations of attorneys' fees in particular district courts to find statistical significance in our regressions for all federal district courts, but at least I hope to find statistical significance for a subset of district courts with sufficient numbers of fee awards.

10. Please indicate whether you intend to conduct your research using manual searches or by running a data script or some other computer-aided search and/or retrieval process.

I intend to run a script with the assistance of my co-author and research assistants who are technically capable of doing so.[2]  As noted above, I would first limit the set of dockets to be searched by external data analysis of the Federal Judicial Center Integrated Database.  I would then use a Python script to narrow that set of dockets to determine whether a fee award was entered.  Once that narrower set of dockets is identified, I would use a script to acquire the relevant orders and motions.  I would then use large language models on the orders and motions to extract data about those awards.  **Any scripts will be run only after business hours or on the weekends to prevent disruption of court systems.**

---

[2] To the extent that my co-author or research assistant assists with the retrieval process, they will do so entirely under my supervision and in accordance with the requirements imposed upon me.  I am also happy to instruct them to submit their own applications for fee exceptions to work on this project, but the applications would be mostly duplicative.